PERRY T. JONES, JR. AND MICHELLE C. JONES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jones v. Commissioner
Docket No. 9781-86.
United States Tax Court
T.C. Memo 1988-393; 1988 Tax Ct. Memo LEXIS 415; 55 T.C.M. (CCH) 1690; T.C.M. (RIA) 88393; August 23, 1988. Zipporah J. Lewis, for the petitioners. Diane L. Berkowitz, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax Under
Years
Deficiencies
Section 6651(a)(1)
1980
$ 1,090.00
$ 286.18
1981
1,850.60  75.63   After concessions by both parties, [1] the issues presented are (1) whether petitioner Perry *416 T. Jones' gambling activities constituted a trade or business for the purpose of deducting purported gambling related expenses; (2) whether petitioners' automobile expenses are deductible; (3) whether petitioners' education business expenses are deductible; and (4) whether petitioners are subject to additions to tax pursuant to section 6651(a)(1) [2] for failure to timely file Federal income tax returns. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are so found. The stipulation of facts and attached exhibits are incorporated herein by *417 this reference. Petitioners Perry T. Jones (Mr. Jones) and Michelle C. Jones (Mrs. Jones) resided in Chicago, Illinois, at the time the petition in this case was filed. They filed joint Federal income tax returns for the 1980 and 1981 taxable years. During the years at issue, Mr. Jones was employed full-time as a field auditor for City Colleges of Chicago ("City Colleges'). Mr. Jones was required by City Colleges to work a minimum of 35 hours a week and earned $ 18,574.25 in 1980 and $ 19,774.79 in 1981 with respect to such employment. City Colleges is comprised of a central office and nine separate educational institutions located throughout the Chicago metropolitan area. Mr. Jones' responsibilities as a field auditor for City Colleges required him to travel to and from one or more of the City Colleges' locations on a daily basis and to prepare audit reports for each institution. During the time of the year when one or more of the Chicago area's three racehorse tracks were open, Mr. Jones divided many of his workday afternoons between performing his duties for City Colleges and placing wagers on horses racing at one of these local racehorse tracks. In addition to the *418 hours Mr. Jones allocated to actually placing wagers at the racetrack, Mr. Jones often allocated time in the evenings reading daily racing programs and assorted other racing publications in preparation for gambling on the next day's races. These publications were stored in his residence's basement, two rooms of which had been remodeled prior to the years in issue. As a result of devoting part of his afternoons to gambling, Mr. Jones would occasionally prepare City Colleges audit reports at home in the evenings. In 1981, Mr. Jones also placed wagers on professional football games with a bookmaker. Mr. Jones maintained gambling records for both years at issue. His records for 1980 consist principally of two logs. One log reflects merely the date of the race, the amount bet and the amount won, if any. The other log consists of his gambling related expenses including the costs of programs, admission, tolls, parking, and gasoline for those same periods. Both of these logs reveal that the last bet recorded for the month of December, 1980 was on December 9th. None of the racetracks Mr. Jones frequented in 1980 were open after December 20. 1980. Although both logs indicate that *419 he placed no bets after December 9th, his gambling expense log indicates that he incurred gambling expenses of $ 33 on programs and $ 70 for gasoline between December 20th and 31st. Mr. Jones' 1981 gambling records also consist principally of two logs but the format is different. One log reflects his horseracing gambling activity and contains such information as the date and day of the race, names of horses, odds, purse, name of jockey and trainer and finally the amount bet and won, if any. On at least sixteen different dates that Mr. Jones recorded in his horseracing log that he placed wagers, his records were in error. The horses listed as having raced on each date did not race and the day of the week of such races indicated by his records was incorrect. The other log reflects his gambling activities with respect to amount bet and the amounts won, if any, on professional football games on particular dates. Mr. Jones' gambling income and expenses reported on petitioners' joint income tax returns for the years at issue and purportedly attributable to his gambling activities are set forth below: 1980 Taxable Year
Winnings
$ 12,740.00 Amounts wagered
$ 10,881.00
Admission fees
642.00
Programs and publications
1,408.50
Bank charges
81.20
Automobile expenses
2,200.00
Maintenance and repairs
120.85
Utilities
393.18
Telephone
146.25
Insurance
40.95
Depreciation (cost basis of
residence)
1,075.44
Depreciation (remodeled basement,
furniture, fixtures, and
typewriter)
678.53     (17,667.40)
Net gambling activity loss
($ 4,927.90)
1981 Taxable Year
Winnings
$ 16,283.00 Amounts wagered
$ 13,726.00
Admission fees
812.00
Programs and publications
1,738.50
Bank charges
108.40
Automobile expenses
2,540.00
Maintenance and repairs
148.11
Utilities
577.31
Telephone
168.09
Insurance
47.90
Depreciation (residence)
1,075.44
Depreciation (remodeled basement,
typewriter)  554.00     (21,495.75)
Net gambling activity loss
($ 5,212.75)
*420 Petitioners offset their other income with their net gambling activity losses for each year. The 1981 gambling income and expenses attributable to Mr. Jones' gambling activities with respect to professional football games were not separately stated on their returns. The deductions for maintenance and repairs, utilities, telephone, and insurance for both years equal 20 percent of the total amounts actually paid for such items, reflecting Mr. Jones' estimate of the portion of his residence attributable to the remodeled basement, and, accordingly, to Mr. Jones' gambling activities. The deductions for depreciation on petitioners' residence and capital improvements to their basement, reflect depreciation on 100 percent of their bases in such items. In addition to those purported gambling automobile expense deductions listed above, petitioners also deducted an additional $ 1,654 in 1980 and $ 1,967 in 1981 claiming those expenses were business expense deductions incurred on behalf of City Colleges. Such expenses were incurred by Mr. Jones in traveling from City Colleges' locations to the Chicago area racetracks. During the years at issue, Mrs. Jones was an adult vocational *421 teacher at the Dawson Technical Institute. On their returns for 1980 and 1981, petitioners deducted a total of $ 634.39 and $ 641.15, respectively, as trade or business expenses which were allegedly incurred for the purchase of items given to Mrs. Jones' students to reward their achievements and for expenses allegedly incurred for books, conferences, educational supplies, and publications. Petitioners' income tax returns for taxable years 1980 and 1981 were received by the Internal Revenue Service on February 2, 1983 and April 19, 1983, respectively. Petitioners did not seek extensions of time from the Internal Revenue Service to file their income tax returns for these years. In his notices of deficiency, respondent determined that Mr. Jones' gambling activity during the years in issue was not a trade or business. After allowing Mr. Jones' amounts wagered deductions of $ 10,881 in 1980 and $ 13,726 in 1981, respondent disallowed all of his other gambling deductions. Respondents also disallowed Mr. Jones' automobile expense deductions and Mrs. Jones' education business expense deductions after making a determination that such deductions represented nondeductible personal expenditures. *422 Finally, respondent determined section 6651(a)(1) additions to tax for failure to timely file Federal income tax returns for 1980 and 1981. OPINION The first issue presented is whether Mr. Jones' purported gambling expenses constituted deductible trade or business expenses pursuant to section 162(a). Respondent disallowed all of petitioners' claimed gambling expense deductions, except for the amounts actually wagered, on the ground that such expenses were not incurred in furtherance of any trade or business. In , the Supreme Court addressed the issue of whether a taxpayer's gambling activities was a trade or business within the meaning of sections 62(1) and 162(a). The Court focused on whether a taxpayer's gambling activity was "pursued full-time, in good faith, and with regularity, to the production of income for a livelihood, and is not a mere hobby." 480 U.S. at    . Further, the taxpayer's "primary purpose for engaging in the activity must be for income or profit." 480 U.S. at    . In Groetzinger, the Court concluded that the taxpayer was carrying on a trade or business of gambling. There was a *423 finding that the taxpayer went to the track 6 days a week for 48 weeks for the year at issue and that he devoted 60 to 80 hours each week to gambling related endeavors. The taxpayer had no other employment and relied, albeit unsuccessfully, on his gambling income for support. [3] We must determine whether Mr. Jones' gambling activities in 1980 and 1981 likewise represent a trade or business. Mr. Jones asserts that he devoted 50-60 hours each week exclusively to gambling endeavors. This is in addition to the 35 hours he was required to devote to his employment with City Colleges. He testified that he spent several hours each day at the racetracks, that he often stayed up until 1:30 a.m. evaluating the next day's races by studying racing publications, and that he maintained contemporaneous gambling records each day he gambled. He also testified that he often spent 10-20 hours each weekend researching the next week's races (and football games in 1981) and organizing his gambling records. After carefully considering all of the evidence in the record, we find Mr. Jones' gambling records and testimony both self-serving *424 and not credible in support of his argument that his gambling activity was pursued "full-time, in good faith, and with regularity, to the production of income for a livelihood, and [was] not a mere hobby." Commissioner v. Groetzinger, 480 U.S. at    . Upon close examination of the gambling records Mr. Jones claims to have devoted so much time to meticulously and contemporaneously maintain, we find that they contain many errors. In 1980 for example, Mr. Jones' logs indicate that the last wager he recorded for the month of December, 1980 was placed on December 9th. Also in 1980, Mr. Jones' gambling expense records indicate that he traveled to the local racetracks between December 20th and December 31st incurring expenses of $ 33.00 on programs and an additional $ 70.00 for gasoline. Those alleged expenses were incurred when none of the Chicago area racetracks were open. The most egregious errors appear in Mr. Jones' 1981 gambling records. On cross-examination, respondent offered evidence indicating that particular horses that Mr. Jones recorded in his betting records as having raced for sixteen different dates, in fact never raced on the date indicated by those records, *425 and that the day of the week indicated in relation to the date was also in error. Mr. Jones then admitted that records he labeled and tendered to respondent and the Court as his 1981 betting records were not in fact 1981 betting records but, rather, records for another year. Based on the foregoing and in consideration of the fact that Mr. Jones had a full-time job with City Colleges, we find that Mr. Jones has failed to establish that his gambling activities rose to the level of a trade or business. The evidence establishes that his records were, at best, not contemporously maintained, and at worst, highly suspect. The inference we draw from this is that Mr. Jones did not devote nearly as much time away from the racetrack in pursuit of gambling as his testimony suggests. We accordingly place little weight on Mr. Jones' testimony that he devoted 50-60 hours each week to his gambling activities. Given that Mr. Jones was taking depreciation on his entire cost basis in his residence and 20 percent of most of his household expenses as gambling expenses suggests that Mr. Jones was using his gambling interests as a pretext to deduct personal expenses up to and including the kitchen *426 sink. Accordingly, we hold that Mr. Jones is not entitled to any of his claimed gambling deductions except for the amounts actually wagered. The second issue is whether Mr. Jones, as an employee of City Colleges, is entitled to a deduction for automobile expenses incurred in traveling from City Colleges' locations to the racetracks. Petitioners argue that these expenses are deductible pursuant to section 162(a). It is abundantly clear that these expenses have no relation to Mr. Jones' employment with City Colleges. Accordingly, the deduction of these expenses is disallowed. The third issue is whether petitioners are entitled to deductions pursuant to section 162(a) for unreimbursed education business expenses of Mrs. Jones. Petitioners allege that a total of $ 634.39 and $ 641.15 was paid in 1980 and 1981, respectively, to purchase items to reward the achievements of her students, and also for books, conferences, educational supplies and publications. Respondent does not dispute that such educational expenses, if incurred for the purposes alleged, are deductible pursuant to section 162.[4] Respondent, however, contends that such expenses were not incurred as alleged, but *427 rather were personal, and therefore not deductible. Petitioners bear the burden of proof to establish that such expenditures are deductible. , Rule 142(a). We found Mrs. Jones' testimony, that some deductible expenditures were incurred, credible. Applying the rule in , we hold that petitioners are entitled to education business expense deductions of $ 200 in 1980 and $ 200 in 1981. The final issue is whether petitioners are subject to additions to tax pursuant to section 6651(a)(1) for failure to timely file Federal income tax returns in 1980 and 1981. Petitioners did not argue this issue on brief and have thus conceded this issue. See ; ; . [5] Accordingly, we sustain respondent's determination in this regard. *428 To reflect the foregoing and concessions, Decision will be entered under Rule 155.
Footnotes
1. In his notices of deficiency, respondent partially disallowed state sales tax deductions for 1980 and 1981 and disallowed a legal fee deduction for 1980. The parties have agreed that petitioners' state sales tax deductions for 1980 and 1981 are limited to $ 708.60 and $ 753.00, respectively. Respondent concedes that petitioners' deduction for legal services is allowable. ↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. The taxpayer lost money from gambling for the year at issue. ↩
4. See . ↩
5. . ↩